The People ex rel. William E. Demarest et al., Appellants, v. Charles S. Fairchild, Attorney-General, etc., Respondent.

Under the provisions of the Code (§ 432) authorizing actions in the nature of a *quo warranto* to try the title to office, no positive duty is imposed upon the attorney-general to bring an action upon request of a party claiming office from which he is expelled, but it is a matter within his discretion, and the courts cannot sit in judgment upon his exercise thereof or coerce his action.

Accordingly, *held,* that a *mandamus* would not lie at the instance of a claimant to an office to compel the attorney-general to commence such an action.

No superior right to compel action on the part of the attorney-general is given by the fact that the incumbent of the office holds under a law attempting to abrogate the form of government of a municipal corporation, and to create a new one; which law is claimed by the contestant to be unconstitutional : The attorney-general cannot be compelled to bring an action to settle that question.

(Argued November 14, 1876; decided November 21, 1876.)

Appeal from order of the General Term of the Supreme
Court in the third judicial department affirming an order of
Special Term, which denied a motion for a writ of peremptory
*mandamus*.    (Reported below, 8 Hun, 334.)

The relators alleged that they were duly elected aldermen

and assistant aldermen of the city of New York, pursuant to the city charter, and took the oath of office; that the boards of aldermen and assistant aldermen duly organized as such, but that the mayor refused to recognize them; that the act chapter 335 Laws of 1873 abolishing the board of assistant aldermen and establishing what is termed the minority system of electing the board of aldermen was unconstitutional; that Samuel Lewis and others, claiming to have been elected aldermen under said act, organized themselves as a board of aldermen, were recognized by the mayor, and are pretending to discharge the duties of the office, and that the attorney-general has refused to bring an action to determine the title to the office. The motion was for a writ of *mandamus* requiring him to commence and prosecute such an action.

*W. S. Wolf* for the appellants.

*Charles S. Fairchild*, attorney-general, in person. Whether this action should be brought rested in the discretion of the attorney-general alone, and is subject to no control. (*People ex rel. Peabody* v. *Attorney-General*, 22 Barb., 114; Code, §§ 430–432.)

Allen, J. The language of the statute authorizing actions in the nature of a *quo warranto* to try the title to office is very guarded and does not give the action as of right to every individual who may think that an office to which he has been legally chosen or appointed, has been usurped by another or who may volunteer to become an informer. It says, the action "may be brought by the attorney-general" upon his own information or upon the complaint of any private party. (Code, § 432.) Prior to the Revised Statutes leave of the Supreme Court was required for the institution of proceedings of this character. (1 R. L., 108, § 4.) Under that system, the court in this State exercised a sound discretion in granting or withholding leave to file an information in the nature of a *quo warranto*. (*People* v. *Sweeting*, 2 J. R., 184.) A like

336    PEOPLE ex rel. DEMAREST et al. *v.* FAIRCHILD.    [Nov.,

Opinion of the Court, per ALLEN,.J.

discretion was exercised by the courts in England under similar statutes. (*Rex* v. *Sargent*, 5 T. R., 467.) By the Revised Statutes, the necessity of an application to the court was dispensed with and the discretion before then vested in the court was transferred to and vested in the attorney-general, whose province it was at the common law to determine whether a case had arisen in which the public interests required the proceedings to be instituted. (2 R. S., 581, § 28; Rev. Notes, 5 State at Large, 516.) The primary object of the action is to protect the public against the usurpation of office without legal authority, and the determination of the right of another to the same office is merely an incident to the action and is permitted for the reason that ordinarily the judicial ouster of the incumbent in effect establishes the right of the adverse claimant to the office, and if the attorney-general brings an action to eject an alleged usurper from an office, he may be compelled to join with the people, as plaintiff, the name of the person on whose relation the action is brought. (Code, § 434.) He has a discretion whether he will bring the action, but not as to the proper parties if an action is brought. It is evident that the legislature used the words "may" and "shall" intelligently and with a purpose and that no positive duty is imposed upon the attorney-general to bring an action upon request of a party claiming office from which he is expelled. The statute does not give the individual claiming the office or any other person the legal right to compel an action to be brought by the law officer of the State, or to bring an action in the name of the people. The control over the action and the right to bring it is with the attorney-general, and the courts cannot sit in judgment upon the exercise of his discretion or coerce his action. The language of the act is very circumspect and precludes the idea that the legislature intended to subject the action of the attorney-general in a matter thus affecting the public interest to the dictation of individual interests or to judicial reviews. Judge HARRIS, in a well-considered opinion (reported in 22 Barb., 114; *People* v. *Attorney-General*), shows that a *mandamus* will not lie to compel the

attorney-general to commence an action in the nature of a *quo warranto* at the instance of a claimant of the office in dispute. The counsel for the relators concedes that the doctrine that the right to decide whether a *quo warranto* should issue is vested in the attorney-general may be sound when two officers claim under the same system conceded to be constitutional, but contends that inasmuch as the relators do not claim the seats of the intruders, but for a restoration of what they claim to be the constitutional government of New York city, and that they are entitled to distinct offices under the form of government attempted to be abrogated ; the determination of that official is not final, but their right to his intervention by action is absolute. It would seem that in this view any citizen would have an equal right with the relators to inaugurate an action to test the constitutionality of the law under which the city officials hold office. The constitutionality of the law can be tested when the question properly arises in an action in which it becomes material, but the attorney-general cannot be compelled to bring an action merely for the settlement of that question. But the right of the relators is not affected by the questions of law or of fact upon which they propose to test the right of the incumbents to their offices, and the case is not distinguished favorably to the relators from *People* v. *Attorney-General (supra)*. The attorney-general may have erred in judgment, and for this there is no remedy. If he has acted corruptly or from unworthy motives and the legal rights of the relator have been prejudiced this is not an appropriate remedy.

The order must be affirmed.

All concur.

Order affirmed.